IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES F. MENEFIELD,<br><br>            Plaintiff,<br><br>    v.<br><br>MATTHEW CATE,<br><br>            Defendant.                    / | No. C 08-00751 CRB (PR)<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Plaintiff James Menefield moves for a preliminary injunction compelling Defendant Cate to provide Plaintiff access to Halal meals that would include a Halal meat option whenever Kosher meat is served. Alternatively, Plaintiff asks this Court to order Defendant to permit him to participate in the Kosher meal program.

For the reasons the follow, the motion is GRANTED. Defendant Cate is hereby ORDERED to provide Plaintiff with access to the Kosher meal program. If and when the State succeeds in implementing its proposed Halal option, and is prepared to provide Plaintiff with access to that program, it may come before this Court to seek dissolution of this injunction.

**Background**

Plaintiff argues that the California Department of Corrections and Rehabilitation ("CDCR") has an official policy of ignoring the dietary prescriptions of Islam. Mot. at 2. While Kosher meals are provided to qualifying Jewish inmates, no similar accommodation is made for Muslim inmates. Under current regulations,"Jewish inmates may participate in the [Kosher] program, as determined by a Jewish Chaplain." Cal. Cod Regs. tit. 15, § 3054.2. On December 8, 2006, Plaintiff requested to participate in the Kosher diet program provided by the CDCR. Menefield Decl. ¶ 7. While Plaintiff does not believe Kosher meals fully satisfy his religious obligations, the ritualistic preparation is more similar to Halal foods than is the standard prison fare. Upon his application to participate in the Kosher program, Plaintiff was led to believe that the request would be granted. Id. ¶ 6. When he received his Religious Diet Card the next month, however, it listed his religious diet as "Islam," which permitted him only vegetarian meals instead of Kosher meals. He was informed by the prison chaplain that state regulations did not permit him to approve Muslim inmates for Kosher meals. According to Plaintiff, "a vegetarian meal is not an equal substitute for Halal because a meat-free diet conflicts with the Holy Qur'an's directive to eat what Allah has provided us. . . . I sincerely believe that vegetarianism is utterly foreign to the religion of Islam." Id. ¶ 8. Plaintiff appealed the chaplain's decision within the prison system, but his appeal was denied.

**Discussion**

A plaintiff "seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter v. Nat. Resources Def. Council, Inc., 129 S.Ct. 365 (2008)). The relevant factors all lean in Plaintiff's favor.

**1. Likelihood of Success on the Merits**

Plaintiff asserts a number of legal theories to support a preliminary injunction, both Constitutional and statutory.  First, he relies upon the Equal Protection Clause.  This Clause has been held to provide "that prison officials cannot discriminate against particular religions."  Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), rev'd on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).  In addition, prisons must provide an inmate "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."  Cruz v. Beto, 405 U.S. 319, 322 (1972).  "Prisons need not provide identical facilities or personnel to different faiths, but must make 'good faith accommodation of the [prisoners'] rights in light of practical considerations.'"  Freeman, 125 F.3d at 737 (quoting Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987)).

It is the Court's view that a "good faith accommodation" of Plaintiff's rights requires Defendant to grant, at minimum, Plaintiff's request for a Kosher meal.  Such an option is provided to Jewish inmates, and Defendant presents no "practical consideration[]" that counsels against providing the same option to Plaintiff.  Plaintiff has therefore established a likelihood of success on his Equal Protection claim with regard to his entitlement to a Kosher meal.[1]

Plaintiff has similarly established a likelihood of success with regard to his other claims: free exercise of religion under the First Amendment and the RLUIPA.  As to the free exercise claim, the Ninth Circuit has held that inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993).  While these rights can be restricted to achieve legitimate penological goals and maintain prison security, the State has not made any arguments with regard to how these factors apply to Plaintiff's request for Kosher meals.  Without such practical concerns, a Plaintiff must satisfy two criteria (1) the proffered belief must be sincerely held, and (2) the claim must be rooted in religious belief.  Lewis v. Ryan,

---

[1] This Court does not address the likelihood of success as to Plantiff's request for a Halal meal.  As explained below, even assuming a likelihood of success on this claim, the balance of equities counsels against ordering the provision of Halal meals at this time.

3

2008 WL 1944112, at *18 (S.D. Cal. May 1, 2008). Plaintiff's Declaration establishes both criteria. Plaintiff explains that "vegetarianism is utterly foreign to the religion of Islam," and that the standard meals include meat that has not been prepared according to the dictates of his religion. Menefield Decl. ¶¶ 6, 8. The State provides no reason to doubt the sincerity of Menefield's belief.

As for RLUIPA, that statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief. Id. § 2000cc-5(7)(A).

The State has not established a compelling governmental interest that would forbid giving Plaintiff kosher meals. At oral argument the state conceded that providing such a meal to Plaintiff would have a vanishingly small cost, given that it already provides Kosher meals to Jewish inmates where Plaintiff is incarcerated.

For the reasons explained above, this Court concludes that Plaintiff has established a high likelihood of success on the merits, at least as to the providing him access to Kosher meals.

**2. Harm to the Plaintiff**

According to the Supreme Court, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373-74 (1976). Plaintiff's case has been pending for some time now, during which time he has been forced to eat food that does not comport with his sincerely held religious beliefs. We conclude, along with a magistrate judge in this district, that this constitutes irreparable harm. See Ashanti v. Tilton, No. 07-0807, 2009 WL 413593, at *3 (E.D. Cal. Feb. 18, 2009).

**3. Balance of Equities**

4

Plaintiff argues that "providing [him] with Halal meals, or Kosher meals in the alternative, would not cause significant harm to the CDCR. The fiscal and administrative impact of providing Plaintiff with a Halal meal would result in no more than a de minimis burden on the State." Mot. at 14.

While we agree that providing Plaintiff a Kosher meal imposes only a very small burden on the State, Plaintiff conceded at oral argument that ordering a Halal option to be provided for Plaintiff at this time would be logistically far more complicated. As both parties note, the State is actively working on enacting regulations that would substantially meet Plaintiff's concerns. According to the State's briefing, it expects that the regulations will be enacted by late November. Because the State is actively attempting to remedy this situation, and because there are currently no established facilities or suppliers to provide Plaintiff with Halal food, the balance of equities leans against ordering that Plaintiff be given Halal food. Therefore, even if we assume he is likely to succeed on the merits of that claim, this Court declines to issue that broad an injunction.

However, the balance comes out differently with regard to Plaintiff's request that he be allowed Kosher food. There is no logistical complication in making such food available, and the State concedes that it would not be substantially more expensive. The balance of the equities therefore leans in Plaintiff's favor.

**4. Public Interest**

Neither Plaintiff nor Defendant makes arguments specific to this factor, and we conclude that the other factors explained above are more relevant to this case.

**Conclusion**

This Court concludes that Plaintiff has established (1) likelihood of success with regard to his request for kosher meals, (2) that failure to provide such food constitutes irreparable harm, and (3) that the balance of equities leans in his favor. While this Court appreciates that the regulatory process can be unavoidably complex and long, we see no compelling reason not to permit Plaintiff access to the Kosher option while that process continues. If, as the State expects, the relevant regulations enter into effect in late November

5

and Plaintiff is given access to Halal meals, the State will have the opportunity to present such evidence to this Court and seek dissolution of this injunction.

Defendant is hereby ORDERED to provide Plaintiff with access to Kosher meals, and Plaintiff is directed to enter a bond of $20 with the clerk of the court.

**IT IS SO ORDERED.**

Dated: October 2, 2009

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE